LAY, Senior Circuit Judge, concurring:

I am pleased to concur in Chief Judge Hatchett's excellent opinion holding (1) that the filing fee provisions of the PLRA do not violate a prisoner's equal protection rights, and (2) that the procedural mechanism for dismissal of in forma pauperis (IFP) suits found in § 1915(e)(2) may be applied retroactively. I write separately, however, to note my concern as to the constitutionality of § 1915(e)(2)(B)(ii), which allows sua sponte dismissal of an IFP complaint that fails to state a claim upon which relief may be granted.

This case comes to us in an unusual posture. On June 18, 1996, the district court, without service of process, summarily dismissed Mitchell's pro se complaint as failing to state a claim for relief, applying the dismissal standard of Fed. R. Civ. P. 12(b)(6). On July 31, 1996, the district court granted Mitchell leave to appeal IFP, assessing him filing fees pursuant to the new provisions of § 1915(b). The only issues decided by the district court related to whether Mitchell had filed a complaint sufficient to withstand dismissal under the new act. On January 28, 1997, this court ordered an expedited appeal and appointed counsel. Although issues regarding the PLRA were not raised or briefed in the district court, this court requested that counsel address the constitutionality of § 1915(b), and the retroactive effect, if any, of § 1915(e)(2). I am informed that one of the reasons this court took this action is that several hundred cases in the district courts of the Eleventh Circuit are awaiting a decision on the

constitutionality and retroactivity of the PLRA.  In addition, it should be obvious that the court took this liberty because this petitioner appeared <u>pro se</u> in the district court, and because of the importance of these issues to all IFP litigants.

Litigants and district courts, however, should not be confused by the path of this litigation.  Additional constitutional challenges to the PLRA, including the one I articulate today, are not foreclosed by this court's opinion.  I write this concurring opinion to note my concern with the substance of § 1915(e)(2)(B)(ii), used in this case, which I feel is constitutionally flawed.  Since this court raised the constitutional issues on its own, it seems to me our opinion should be expanded to consider this additional constitutional concern.

It is my view that in this section, Congress has deprived prisoners and other indigents[1] of a significant procedural right

---

[1]Section 1915(e) applies to all IFP litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.  Therefore, in my discussion of § 1915(e), I will usually use the term "IFP litigants" to encompass all of these individuals.  I note, however, that the group most affected by § 1915(e) will be prisoners, simply because they make up such a large fraction of IFP litigants.  In addition, the 1996 statute's purpose is to curtail prisoner litigation, a point exemplified not only by its title, but also by the ambiguous language in § 1915(a), which purports to apply to any "person," but only if that person "submits an affidavit that includes a statement of all assets such <u>prisoner</u> possesses." (emphasis added).  This section obviously needs clarification. <u>See</u> <u>Floyd v. United States Postal Serv.</u>, 105 F.3d 274, 275 (6th Cir. 1997) ("Despite the use of the term 'prisoner possesses,' we conclude that a typographical error in the final version of the statute occurred and that Congress actually intended the phrase to be 'person possesses.'").

that noninstitutionalized paying litigants enjoy, and has not provided a rational justification for this differential treatment.

Under the earlier version of the IFP statute, the district court was empowered and instructed to dismiss an IFP application sua sponte if it deemed the suit was frivolous or malicious. 28 U.S.C. § 1915(d) (1994). This rule was in accord with the established principle that a patently frivolous complaint may be dismissed for want of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Neitzke v. Williams, 490 U.S. 319, 327 n.6 (1989) (citing Hagans v. Lavine, 415 U.S. 528, 536-37 (1974); Bell v. Hood, 327 U.S. 678, 682-83 (1946)). The obvious rational basis for such peremptory action was that the government should not incur expenses in serving parties sued in frivolous actions. Thus, named defendants were typically not required to respond to these suits. See Neitzke, 490 U.S. at 324 ("Dismissals on these grounds are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints."). Section 1915(d)'s successor, 28 U.S.C. § 1915(e), applied here to Mitchell's complaint, allows courts to dismiss a complaint sua sponte not only for frivolousness, but also for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).[2] While

---

[2]Section 1915(e)(2) reads as follows:

Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—

(A) the allegation of poverty is untrue; or

3

courts have recognized that this seemingly innocuous change is a significant expansion of the court's power, see, e.g., Douglas v. DeBruyn, 936 F. Supp. 572, 579 n.4 (S.D. Ind. 1996), nothing in the legislative history of the statute indicates that Congress was aware of the real meaning of the change. See 141 Cong Rec. S14413-S14419 (daily ed. Sept. 27, 1995); 141 Cong. Rec. S7525-S7527 (daily ed. May 25, 1995).

The difference between dismissal for frivolousness and dismissal for failure to state a claim was explained by the Supreme Court in Neitzke, which interpreted § 1915(d) of the old IFP statute. The Neitzke Court, as a matter of statutory interpretation, was critical of the district court in conflating the standards of frivolousness under the old §1915(d) and failure to state a claim upon which relief could be granted. The Supreme Court observed that the error in doing so denied "indigent plaintiffs the practical protections against unwarranted dismissal generally accorded paying plaintiffs under the Federal Rules." 490 U.S. at 330.

Neitzke recognized that protection from sua sponte dismissal for failure to state a claim is a meaningful right:

---

(B) the action or appeal—

    (i) is frivolous or malicious;
    (ii) fails to state a claim on which relief may be granted; or
    (iii) seeks monetary relief against a defendant who is immune from such relief.

Its predecessor read, "The court may . . . dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d) (1994).

4

Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon. These procedures alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.

Id. at 329-30. The PLRA strips this right only from IFP litigants, denying them equality of treatment in the federal courts. See id. at 330 (noting the unfairness in applying the failure to state a claim dismissal standard to § 1915(d), because an indigent litigant's complaint "whose only defect was its failure to state a claim, will in all likelihood be dismissed sua sponte, whereas an identical complaint filed by a paying plaintiff will in all likelihood receive the considerable benefits of the adversary proceedings contemplated by the Federal Rules"). This differential treatment cannot in my view be justified by the stated purposes of the PLRA -- to deter frivolous prisoner litigation and ease the burden of such suits on the federal courts. The distinction between immediate dismissal for failure to state a claim and immediate dismissal for frivolousness, if not lost on the average litigant, surely will not weigh heavily in his or her decision whether to bring a claim. Easing the small bit of the courts' burden that is made up of complaints that are not frivolous but nonetheless fail to state a claim simply cannot be justified when weighed against the procedural right IFP litigants are denied. Depriving one group of this right while retaining it for another stands in stark opposition to established principles of equal

5

access to courts for all litigants, which of course is the original purpose behind 28 U.S.C. § 1915. See Coppedge v. United States, 369 U.S. 438, 447 (1962) (noting that the purpose of the IFP statute was "to assure equality of consideration for all litigants"); cf. Rinaldi v. Yeager, 384 U.S. 305, 310 (1966) (ruling that judicial mechanisms like appellate review "must be kept free of unreasoned distinctions that can only impede open and equal access to the courts").[3]

In stating my objections, I recognize that there is no question that many prisoner suits are baseless. I also agree that the payment of a filing fee may well deter such suits. We should proceed with caution, however, in approving additional deterrence mechanisms that trample prisoner litigants' rights, for fear we lose sight of the purpose of prisoner litigation: to protect prisoners' constitutional rights, and to curb inhumane treatment and abuse of power in prison environments. See generally, e.g., Hudson v. McMillian, 503 U.S. 1, 4 (1992) (determining that prison guards who placed an inmate in handcuffs and shackle and beat him while their supervisor told them "not to have too much fun" used

---

[3]The same problems arise under the newly given right of the court to dismiss claims on the ground of immunity. Under Fed. R. Civ. P. 12(c), the defense of immunity is an affirmative defense, which should be asserted in an adversarial setting. Some courts have required plaintiffs responding to assert specific facts addressing the defense of qualified immunity in a special reply under Rule 7, governing notice pleading. See, e.g., Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). Often, factual issues need to be resolved to determine whether immunity is justified. Resolution of these issues can only occur in an adversarial setting. Obviously, if the case is patently frivolous on immunity grounds, the court can still dismiss it before service, under § 1915(e)(2)(B)(i).

excessive force in violation of the Eighth Amendment); Smith v. Wade, 461 U.S. 30 (1983) (affirming a punitive damage award against a prison guard whom a jury found liable for the harassment, beating, and homosexual rape of a Missouri reformatory inmate); Hutto v. Finney 437 U.S. 678, 681-83 (1978) (deeming the district court's characterization of Arkansas prison conditions as "a dark and evil world completely alien to the free world" to be "amply supported by the evidence"). While many prisoner lawsuits are a burden to the state and to the judicial system, limited overview by the courts serves as a deterrent to prison authorities who might otherwise abuse their power, and serves also as a necessary inducement to them to provide humane conditions to prisoners.[4]

---

[4]Chief Judge Jon Newman of the Second Circuit has challenged courts with prisoner litigation suits before them to "avoid letting the large number of frivolous complaints and appeals impair their conscientious consideration of the few meritorious cases that are filed." Hon. Jon O. Newman, Pro Se Prisoner Litigation: Looking for Needles in Haystacks, 62 Brook. L. Rev. 519, 527 (1996). The adversarial process inherent in the standard for dismissal for failure to state a claim is a useful tool in meeting this challenge. See Neitzke, 490 U.S. at 330. Congress has not provided a rational justification for denying the courts this tool and differentiating between indigent and nonindigent litigants.